IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**CHURCH ON THE ROCK NORTH**          §
**d/b/a THE NORTH CHURCH**,            §
                                       §
              Plaintiff,               §
                                       §
v.                                     §    Civil Action No. **3:10-CV-0975-L**
                                       §
**CHURCH MUTUAL INSURANCE**,           §
**COMPANY**,                           §
                                       §
              Defendant.               §

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Church Mutual Insurance Company's Amended Motion for

Summary Judgment, filed March 30, 2012. After careful review of the motion, briefs, record, and

applicable law, the court **denies** Defendant Church Mutual Insurance Company's Amended Motion

for Summary Judgment (Doc. 19).

## I.    Factual and Procedural Background

This lawsuit arises from a dispute regarding an insurance claim filed by Plaintiff Church on

the Rock North d/b/a The North Church ("Plaintiff" or "North Church") to recover for damages

sustained to its property (the "Property") during a thunderstorm on April 10, 2008.[1] North Church

originally brought this action on April 8, 2010, against Defendant Church Mutual Insurance

Company ("Defendant" or "CMIC") in the 95th Judicial District Court, Dallas County, Texas,

asserting claims for breach of contract, breach of the duty of good faith and fair dealing, and

violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA").

---

[1] Unless otherwise stated, the facts set forth herein are undisputed.

**Memorandum Opinion and Order – Page 1**

North Church seeks to recover actual and consequential damages, exemplary damages, treble damages, attorney's fees pursuant to section 541 of the Texas Insurance Code and section 38.001 of the Texas Civil Practice and Remedies Code, prejudgment and postjudgment interest, and costs of court.

Plaintiff North Church is a nonprofit organization that owns property at 1615 West Beltline Road, Dallas, Texas.  Defendant CMIC is an insurance company licensed to do business in Texas. The insurance claim at issue was made by North Church on April 8, 2008, pursuant to a September 23, 2007 commercial insurance policy (Policy No. 0124874-02-828825 and hereafter referred to as the "Policy"), covering the church's property, which consists of two buildings that house a sanctuary, gymnasium, kitchen, various meeting rooms, and office spaces.

In its Original Petition ("Complaint"), North Church contends:

> The building and the Property insured by Defendant suffered substantial damage during a storm on . . . April 10, 2008.  Plaintiff's representative promptly provided Notice of Loss to Defendant and/or its agents, fully complying with its duties under the Policy for notice of claims.  Despite demand by Plaintiff that Defendant pay the just amounts due under the Policy, Defendant has failed and refused and continues to fail and refuse to pay the total value of the claim for which it is obligated to pay under the Policy.  Defendant's unlawful actions include, but are not limited to Defendant's failure to pay fo the total roof replacement, interior and exterior damage, emergency repairs and business interruption loss as provided by the Policy; withholding of the depreciation for repairs previously acknowledged as due and owing under the Policy; and failure to adjust and make a determination regarding interior damages including damages to electronic equipment and sanctuary seating.

Pl.'s Orig. Pet. 3.  North Church further contends that CMIC breached its duty to pay loss benefits within the time required by the Policy.  *Id.* 4.  North Church similarly asserts, with regard to its claims under the Texas Insurance Code, that CMIC breached its duty of good faith and fair dealing by withholding and delaying payment of North Church's claims more than sixty days after receiving

all information requested and required to process the claim. *Id.* 4-5.  With regard to its DTPA claim,

North Church contends:

> At the time Defendant presented the Policy to Plaintiff, Defendant represented that benefits for Property damage suffered as a result of a tornado, including wind and hail, during the Policy period would be paid to the extent necessary to repair the building and replace the roofs with material of like[] kind[] and quality.  Defendant's act of denying payment of benefits due under the Policy constitutes a material misrepresentation of the Policy benefits and violates section 17.46(b) of the DTPA in that Defendant represented that the Policy had characteristics, uses or benefits, which it did not, and that the Policy did not confer the protections as represented.

*Id.* 6.

CMIC received notice of the claim on April 10, 2008, and immediately assigned the claim

to Property Claims Service, Inc. ("PCS"), who conducted an initial inspection of the Property that

same day.  From April 10, 2008, to May 12, 2009, both parties conducted a number of inspections

and had their respective adjusters prepare estimates of the losses sustained.  During this time, the

parties were able to reach agreement on the loss amount for certain items, and CMIC asserts that it

issued four payments to North Church totaling $888,179.61, which included approximately $200,000

for temporary roofing and other repairs.  The parties, however, were unable to reach agreement

regarding a number of remaining items, including the cost to repair and replace the roof of the

Property.  North Church submitted an estimate for $1,027,290 to replace the roof using 614 squares

before waste, which included the roofing contractor's overhead costs.  CMIC rejected the estimate

and hired a roofing consultant, reasoning that the estimate provided by North Church's roofing

contractor would result in a total cost of almost $1700 per square.

According to CMIC, after receiving notice on August 6, 2009, from North Church's counsel

that North Church intended to pursue claims under the DTPA and Texas Insurance Code, CMIC

invoked the appraisal process under the Policy on August 17, 2009, to resolve the remaining disputed

items.  Both parties appointed adjusters but were unable to agree to an appraisal price for the remainder of North Church's claim. The parties therefore selected an umpire on March 2, 2010.

Before the appraisal process was complete, North Church filed suit in state court on April 8, 2010.  On May 13, 2010, CMIC removed the action to federal court.  On June 4, 2010, CMIC moved to dismiss the action or, alternatively, abate the action pending completion of the appraisal process.  North Church opposed dismissal of the action but was not opposed to abating the case pending completion of the appraisal process. By order dated June 24, 2010, the court administratively closed the case to give the parties time to complete the insurance appraisal process and directed the parties to file a motion to reopen the case or a joint status report regarding the status of the appraisal process no later than January 3, 2011.

The appraisal process was completed two months later on August 16, 2010.  In his appraisal award, the umpire appraised all losses presented at a replacement cost value of $1,408,547.64 and an actual cash value of $1,049,886.25, excluding deductibles and prior payments by CMIC to North Church.  Def.'s App. 72.  The award included $239,419.01 for temporary roof repairs. *Id.* 76.  It also included a replacement roof cost of $539,720.76 with depreciation in the amount of $323,832.46 and a total cash value of $215,888.30.  *Id.* According to CMIC, "after deductions for the insured's deductible, prior payments on the loss, and recoverable depreciation, [CMIC] issued a check totaling $261,706.84" for the balance of the loss owed, which was received by North Church on September 8, 2010.  Def.'s Mot. 6.  CMIC asserts that on January 7, 2011, "at the request of the insured and based on the umpire's final award, [CMIC] issued a $323,832.46 check to [North Church], Evangelical Christian Credit Union, and Suncoast Claims, Inc., releasing the depreciation held back for repairs to the roof," and that such check was "received" by North Church on January 11, 2011.

Def.'s Mot. 6.   North Church signed an Acknowledgment of Payment and Receipt for both of the payments by CMIC.  Def.'s App. 81-84.

CMIC asserts that on January 7, 2011, the same date of its last payment to North Church, North Church's counsel informed CMIC that it "still had remaining [unresolved] claims and a letter detailing those claims would be forthcoming.  Def.'s Mot. 6.  After not hearing anything further from North Church, CMIC wrote to North Church in July 2011 and requested further information about Plaintiff's claims.  North Church did not respond.  On November 18, 2011, CMIC filed a motion for summary judgment in conjunction with its Motion to Reopen Case, seeking dismissal of Plaintiff's claims for violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act, breach of contract, and bad faith.  Because the case had not yet been reopened, the court denied as moot a motion by Plaintiff to extend its response deadline to the summary judgment motion.  Plaintiff thereafter moved to reopen the case on January 6, 2012.

Before ruling on the motions to reopen the case, the court conducted a hearing because noticeably absent from both parties' motions to reopen the case was an explanation for the one-year delay in failing to comply with the court's June 24, 2010 order requiring the parties to either move to reopen the case or file a joint status report regarding the status of the appraisal process by January 3, 2011.  The court further noted that Plaintiff in particular has a duty to prosecute this action and its claims since it is the party who filed the action.  *See* Fed. R. Civ. P. 41(b).  Rather than diligently prosecuting its claims, Plaintiff waited over one year until after CMIC filed a motion for summary judgment before seeking to reopen the case.  Plaintiff contended in its motion to reopen that it needed to conduct discovery to respond to Church Mutual's summary judgment motion.  Because CMIC maintained that North Church's claims were barred by Texas law as a result of the appraisal

process and that it was entitled to judgment as a matter of law on those claims, the court decided to delay discovery until after ruling on CMIC's summary judgment motion.  The court therefore reopened the case and permitted the parties to file amended summary judgment briefing and appendices in accordance with the court's Civil Local Rules.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense

to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III.    **Analysis**

A.    **Summary of the Parties' Contentions**

CMIC contends that when an insurer pays an appraisal award in compliance with the parties' contract, there can be no liability for breach of contract based on the insurance policy.  According to CMIC, "Texas law is clear that the timely payment of an appraisal award estops a contractual claim by the insured."  Def.'s Reply 2, 4-5 (citing *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366 (5th Cir. 2012) (unpublished), and *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 787 (Tex. App.   Houston [14th Dist] 2004, no pet.)).  CMIC further asserts that absent a finding that an insurance policy was breached, there can be no extra-contractual liability related to the handling of the claims.  CMIC contends that, because it promptly paid North Church in accordance with the appraisal award, North Church's contract and extra-contractual claims fail as a matter of law.  With regard to North Church's contention that it delayed unreasonably in making payments, CMIC contends: "At least one court has held that a dispute over the amount owed under a policy established a reasonable basis for delaying payment, and that once the insurer paid an appraisal award, the insured could not establish that the insurer had acted unfairly in its claims settlement procedure in violation of Article 21.21."  Def.'s Mot. (citing *Waterhill Cos. Ltd. v. Great Am. Assurance Co.*, No. Civ. A. H-05-4080) 2006 WL 696577 (S.D. Tex. 2006)).

In response, North Church objects to CMIC's summary judgment as premature because it contends that it has not had adequate time to conduct discovery before responding.  Even if the court determines that the issues in CMIC's summary judgment motion can be decided as a matter of law, North Church contends that CMIC has failed to demonstrate the absence of a genuine dispute of

material fact as to any of North Church's claims. North Church disagrees with CMIC's characterization of Texas law and contends that prompt payment of an appraisal award does not preclude liability for extra-contractual claims based on violations that occurred *before* the appraisal process.   According to North Church, extra-contractual and statutory claims are "'outside the bounds' of an appraisal decision, and such damages 'are not limited to the amount of the appraisal decision." Pl.'s Resp. 7 (quoting *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 256 (Tex. App.   Austin 2002, writ granted w.r.m.).   North Church further contends that in the cases cited by CMIC, the parties were permitted to complete discovery, and it was only after discovery was conducted that the courts in these cases concluded that the insured's extra-contractual claims failed because there was no evidence or insufficient evidence of pre-appraisal wrongdoing to raise a genuine dispute of material fact.   Even if the court concludes that its breach of contract and extra-contractual claims based on pre-appraisal misconduct fail, North Church contends that its bad faith claim survives because it falls within a recognized exception under Texas law that applies when an insured suffers injury independent of the policy claim or when an insurer fails to investigate timely the insured's claim.

### B.     Discussion

Boiled down to its essence, CMIC's contention is that without a viable contract claim, North Church's other claims necessarily fail, and North Church cannot succeed on its contract claim because it is estopped by the alleged binding appraisal award and CMIC's timely payment of the award from pursuing a contract claim under the Policy.

### 1.    CMIC's Estoppel Defense to North Church's Contract Claim

Estoppel is an affirmative defense that applies to a contract claim when a party "accepts a benefit voluntarily and with knowledge of all material facts." *Richardson v. Allstate Texas Lloyd's*, 235 S.W.3d 863, 865 (Tex. App.    Dallas 2007, no pet.); *see also* Fed. R. Civ. P. 8(c) (estoppel is an affirmative defense).[2]  As the summary judgment movant and party asserting the defense, CMIC has the burden of establishing "beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in [its] favor." *Fontenot*, 780 F.2d at 1194; *Richardson*, 235 S.W.3d at 865 ("As claimant of such defense, appellee had the burden to prove appellant was 'estopped by the acceptance-of-benefits doctrine.'") (quoting *Cooper v. Bushong*, 10 S.W.3d 20, 23 (Tex. App.    Austin 1999, pet. denied)).  According to the cases cited by CMIC, North Church is not estopped from asserting a contract claim under the Policy as a result of the appraisal process unless CMIC proves: (1) the existence of a binding and enforceable appraisal award; (2) CMIC's payment

---

[2] Rule 8(c) of the Federal Rule of Civil Procedure states: "[I]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . estoppel." Fed. R. Civ. P. 8(c).  Failure to plead an affirmative defense in accordance with Rule 8(c) may result in waiver of the defense; however, the "technical failure to comply with Rule 8(c) is not fatal," if the defense "is raised in the trial court in a manner that does not result in unfair surprise" to the plaintiff.  *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).  If "raised at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond," the defense is not waived. *Rogers v. McDorman*, 521 F.3d 381, 385-86 (5th Cir. 2008) (internal quotation marks and citation omitted). Here, CMIC did not plead the defense of estoppel or any other defense in its answer to North Church's Original Petition; nor did it file an amended answer after removing the case to federal court.  The court, nevertheless, determines that the defense was not waived.  The term estoppel appeared for the first time in CMIC's amended reply brief; however, it is apparent from the cases cited by CMIC in its original summary judgment motion, filed on November 18, 2011, that it intended to rely on the defense.  The court therefore concludes that North Church had an adequate opportunity to respond.  *See Allied Chem. Corp*, 695 F.2d at 855-56 (concluding that defense of usury raised for the first time in a motion for summary judgment was not waived).  Further, although North Church contends that CMIC's summary judgment motion is premature because the parties have not conducted discovery, it does not contend that CMIC waived the defense by failure to plead it or that it is prejudiced by CMIC's assertion of the defense for the first time in its summary judgment motion.  Moreover, the court determines that North Church will not be prejudiced by the court's consideration of CMIC's estoppel defense in ruling on the summary judgment motion because, for the reasons herein discussed, the court concludes that CMIC is not entitled to summary judgment based on this defense.

of the award in a timely manner; and (3) North Church's acceptance of the payment. *Blum's*, 459 F. App'x 366, at *1 (citing *Franco*, 154 S.W.3d at 787).

The parties dispute at length the significance of the holdings and the facts in the large number of cases cited that involve appraisal awards, but they devote little time, if any, briefing the issue of whether CMIC met its burden with regard to its estoppel defense. As noted above, however, CMIC, not North Church, has the burden to establish its estoppel defense. Accordingly, the court considers CMIC's arguments and evidence to determine whether it has met its burden.

CMIC's briefing and evidence focus almost exclusively on its issuance of two checks after the appraisal award and North Church's "receipt" of those payments. CMIC contends that "timely payment" alone, without more, is sufficient as a matter of law to defeat Plaintiff's claims. For example, CMIC contends: "Texas law is clear that the timely payment of an appraisal award estops a contractual claim by the insured," and "precludes an award of statutory penalties under the Texas. Ins. Code 541, 542 as a matter of law." Def.'s Reply 1-2. As discussed herein, CMIC's contention in this regard is not supported by the cases on which it relies.

### a.    Existence of a Binding and Enforceable Appraisal Award

With regard to the first element, the existence of a binding and enforceable appraisal award, CMIC does not specifically address whether the appraisal award here is binding and enforceable but appears to assume that this is a foregone conclusion. Whether an appraisal award is binding often depends on the parties' contract but sometimes requires consideration of other evidence. *See Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App. Dallas 1996, writ denied) ("An appraisal award made pursuant to the provisions of an insurance contract is binding and enforceable."); *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 800-01 (Tex. App. Amarillo

1995, writ denied) (concluding that a fact issue existed as to whether a reservation of rights regarding

the appraisal negated or modified language in the policy that appraisal was to be binding).  CMIC

points to and quotes, without discussion, the language of the appraisal provision in the Policy, which

states in pertinent part:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within twenty (20) days of such demand. The two appraisers will select an umpire. If they cannot agree within (15) days upon an umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. ***A decision agreed to by any two will be binding as to the amount of the loss***. Each party will:

a.      Pay its chosen appraiser; and

b.      Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

a.      ***You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Property Condition***; and

b.      We will still retain our right to deny the claim.

Def.'s App. 65-66 (emphasis added).  Regarding the aforementioned reference to "Legal Action

Against Us," the Policy further states:

No one may bring a legal action against us under this Coverage Part unless:

a.      There has been full compliance with all the terms of this Coverage Part; and

b.      The action is brought within two (2) years and one (1) day after the date on which the direct physical loss or damage occurred.

*Id*. 65.  CMIC does not contend that North Church has not met the Policy's conditions for filing suit. For purposes of ruling on CMIC's motion, the court therefore assumes that North Church has satisfied the contractual requirements for bringing suit.

CMIC asserts in its motion, "[T]he appraisal award was signed by both the umpire Stephen Merdios and [North Church's] appraiser Thomas Stone"; however, it fails to point to any evidence to support this conclusory statement.  Def.'s Reply 9.  While CMIC submitted a copy of the appraisal award in support of its summary judgment motion, it is not signed, and there is no indication that anyone other than Merdios approved of the award.  *See* Def.'s App. 72.  Thus, although the Policy states: "A decision agreed to by any two will be binding as to the amount of the loss," CMIC has not established that "any two" of the appraisers or umpire agreed to the award.  Moreover, the language in Policy that the appraisal was to be binding if agreed to by any two appraisers or umpires is contradicted by language regarding North Church's retention of the right to bring a legal action against CMIC if there is an appraisal.  Accordingly, the court concludes that, unlike the cases cited by CMIC, a genuine dispute of material fact exists as to whether the parties contractually agreed to be bound by the appraisal award.

Other evidence submitted by CMIC casts further doubt on whether the parties intended to be bound by the appraisal award.  The appraisal award itself states in two different places that it "does not constitute a settlement of this claim. The above figures are subject to insurance company approval."  *Id.* 74, 80.  Additionally, as shown below, the two Acknowledgments signed by North Church upon receipt of CMIC's post-appraisal payments undermine CMIC's argument that the appraisal award and its post-appraisal payments estopped North Church from seeking additional damages based on breach of contract and extra-contractual theories:

**Memorandum Opinion and Order – Page 13**

> ***The receipt of payment on this claim by [North Church] shall not be construed as
> a full and final release of all claims against [CMIC]***, and any and all other persons,
> firms, and/or other business entities who might be liable, from any and all liability
> arising out of the incident made the basis of this suit, whether in contract, by statute,
> in equity, or in tort, accrued or to accrue, arising out of or in any way connect[ed]
> with the claims of [North Church] on or about April 10, 2009.

*Id*. 81, 83 (emphasis added).   Viewing this and the other evidence in the light most favorable to

nonmovant North Church, the court concludes that CMIC has failed to establish that the appraisal

award was binding and enforceable against North Church.  *See Hennessey*, 895 S.W.2d at 800-01

(reversing summary judgment in favor of insurer after concluding that a fact issue existed as to

whether a reservation of rights regarding the appraisal negated or modified language in the policy

that appraisal was to be binding).

### b.        Whether CMIC's Payment of the Award was Timely

CMIC contends, based on the holding in *Breshears v. State Farm Lloyds*, 155 S.W.3d 340

(Tex. App.   Corpus Christi 2004, pet denied), that it "timely paid the appraisal."  Def.'s Reply 3.

Specifically, CMIC asserts:

> In granting summary judgment for State Farm, the Court [in *Breshears*] noted that
> the time period to determine late payments was based on the time of the appraisal,
> and[,] therefore, State Farms' payment within 60 days of the appraisal did not violate
> the Texas Insurance Code. Church Mutual received a copy of the appraisal award
> signed by both the umpire on or around September 1, 2010, and timely paid the
> appraisal.

*Id*. (citing *Breshears*, 155 S.W.3d at 345).

Contrary to CMIC's assertion, *Breshears* did not address the issue of whether a payment

made pursuant to an appraisal award was timely.  Rather, the issue in that case was whether, prior

to the appraisal process being invoked, the Breshears were paid by State Farm within the Texas

Insurance Code's sixty-day limit for payment of claims. *Breshears* is therefore irrelevant to the court's analysis.

Although not addressed by CMIC, the court concludes that the issue of whether its post-appraisal payments were timely is determined by the parties' agreement. *See, e.g., Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 878 (Tex. App.   San Antonio 1994, no writ) ("Providence cited the 'loss payable clause' of the policy which required the insurer to pay the appraisal award within 60 days after it was filed, and it complied."). Under the terms of the Policy here, CMIC agreed to pay "for covered loss or damage within five (5) business days after: . . . b. An appraisal award has been made." Def.'s App. 66.

The appraisal award submitted by CMIC is dated August 16, 2010, which was a Monday. *Id*. 73. Thus, according to the Policy, CMIC's payment of the appraisal award was due Monday, August 23, 2010, which is five business days after the award was made. Although CMIC appears to contend, based on its quoted argument above, that its deadline for paying the award is calculated from September 1, 2010, the date it received a copy of the award, the clear language of the Policy does not support such an interpretation.

The first payment by CMIC after the award was "received" by North Church on September 8, 2010. Def.'s Mot. 6. CMIC does not state whether the date North Church received the payment is the same date the payment was made; nor is there any evidence of when the payment was made. If the payment was made after August 23, 2010, it was not timely. CMIC also presented evidence that it subsequently made a much later second payment of $323,832.46, which was not received by North Church until January 7, 2011. Like the first payment, there is no evidence of when this payment was made. It is also unclear whether this payment for depreciation, which was held back

for repairs to the roof, was subject to the five-day deadline for appraisal award payments, a separate provision of the Policy pertaining to depreciation payments, or both.  CMIC acknowledges that this payment was made "at the request of the insured and based on the umpire's final award."  Def.'s Mot. 6.  Again, however, it is unclear whether CMIC's obligation to pay the depreciation was contingent on the award alone.  The court therefore lacks sufficient information regarding the second payment to determine whether it was timely.

The court similarly lacks sufficient information to determine whether CMIC paid all that was owed under the award.  While CMIC states that the amount it paid, $261,706.84, is the amount owed under the award "[a]fter deductions for the insured's deductible, prior payments on the loss, and recoverable depreciation," it has not presented any evidence to establish that the alleged prior payments were actually made.  Instead, it merely states in its motion that it made five payments to North Church from May 13, 2008, to May 12, 2009.  North Church appears to acknowledge that some, but not all, of the payments referenced in CMIC's motion were made.  Thus, based on the record before it, the court concludes that a genuine dispute of material fact exists as to whether CMIC's paid all amounts owed under the award and whether its payments were timely.

### c.   Whether North Church Accepted Payment of the Award

CMIC contends, based on the two Acknowledgments signed by North Church, that North Church "received" its two post-appraisal payments.  CMIC does not specifically address whether North Church's receipt of the payments constitutes acceptance.  In one of the cases relied on by CMIC, the court noted: "A plaintiff . . .  is estopped from pursuing a breach of contract claim not by the issuance of the appraisal award. Instead, the plaintiff is estopped only where, as here, the plaintiff ***accepts payment*** of the appraisal amount from the insurer.  *Blum's Furniture Co. v. Certain*

*Underwriters at Lloyds London*, No. Civ. A. H-09-34792011, WL 819491 (S.D. Tex. Mar, 2, 2011) (emphasis in original), *aff'd*, 459 F. App'x 366 (5th Cir. 2012) (emphasis in original).

Even if North Church's acknowledgment and receipt of CMIC's post-appraisal payments are evidence that North Church accepted the payments, the court concludes that this evidence is insufficient to show that North Church is estopped from asserting claims against CMIC because of the retention of claims language included in the Policy the Acknowledgments.   Accordingly, a genuine dispute of material fact exists as to whether North Church accepted CMIC's post-appraisal payments with the understanding that it would be bound by the award and barred from pursuing claims against CMIC for additional damages.  *See Richardson*, 235 S.W.3d at 865 (Estoppel only applies to a contract claim when a party "accepts a benefit voluntarily and with knowledge of all material facts.").

CMIC's only basis for seeking summary judgment on North Church's contract claim is its estoppel defense.  Having determined that CMIC has not satisfied its burden with respect to any of the elements of its estoppel defense, the court concludes that CMIC is not entitled to judgment on North Church's contract claim.

### 2.   Texas Insurance Code Claims

CMIC contends that it is entitled to summary judgment on North Church's claims under the Texas Insurance Code because "an insurer's payment of an appraisal award precludes an award of statutory interest penalties and attorney's fees as a matter of law."  Def.'s Mot. 7.   CMIC argues similarly in its reply brief, based on the following authority, that "claims for violations of the Texas Insurance Code do not survive payment of an appraisal award":

Texas law clearly establishes that where there is no breach of contract by the insurer, Tex. Ins. Code § 542 is in applicable. *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App.  Corpus Christi 2004, pet. denied);

[CMIC's] timely payment of the appraisal award under the policy precludes an award of statutory penalties under the Texas. Ins. Code §§ 541, 542 as a matter of law. *Amine v. Liberty Lloyds of Texas, Inc.*, 2007 WL 2264477 (Tex. App.  Houston [1st Dist] 2007, no pet.); *Breshears*, 155 S.W.3d at 344.

Texas law clearly holds that payment of an appraisal award does not constitute a liability finding required under Tex. Ins. Code § 542. *Id.*

Texas law establishes that an alleged "delay" in payment while the parties participate in the appraisal process does not implicate Section 542. *See Amine*, 2007 WL 2264477 at 4; *Breshears*, 155 S.W.3d at 344.

Def.'s Reply 1-2.

The court's determination that CMIC is not entitled to summary judgment on CMIC's contract claim because it failed to meet its burden with regard to its estoppel defense moots CMIC's argument that timely payment of an appraisal award precludes an award for statutory penalties under the Texas Insurance Code.  Moreover, contrary to CMIC's contention, the courts in *Amine* and *Breshears* did not hold that timely payment of an appraisal award under the policy precludes an award of statutory penalties as a matter of law.  In *Breshears*, the court noted that an appraisal decisions merely estops "one party from contesting the issue of the value of damages in a suit *on the insurance contract*." *Breshears*, 155 S.W.3d at 343 (emphasis added) (citing cases); *Amine*, 2007 WL 2264477, at *3 (same).  The court says nothing about an appraisal decision estopping an insured from asserting extra-contractual claims.  Rather, the court held merely: "As there was no breach of contract by State Farm, and consequently no judgment against it on which to base interest calculations, *prejudgment interest* cannot be awarded against State Farm." *Breshears*, 155 S.W.3d at 344 (emphasis added).

**Memorandum Opinion and Order – Page 18**

With regard to statutory penalties, the *Breshears* court determined that the plaintiffs' claim failed, not because of the appraisal decision, but because the evidence established that two weeks after the plaintiffs filed a claim with State Farm for $23,735.92, State Farm "sent the Breshears an estimate of $18,742.15 for the value of the work performed along with payment of $13,502.51 (the estimate less their deductible and some prior credits)." *Id.* at 341. The court therefore concluded that State Farm had paid the plaintiff's claim within sixty days "of receipt of all items, statements, and forms reasonably requested and required" as required by the Texas Insurance Code. *Id.* at 344-45.

The court in *Amine* does state, "Texas courts that have considered the issue have concluded that full and timely payment of an appraisal award under the policy precludes an award of Article 21.55 penalties as a matter of law"; however, *Amine* cites *Breshears* for this proposition, and as discussed above, this statement of law is not supported by *Breshears*. *Amine*, 2007 WL 2264477, at *4. CMIC and the court in *Amine* both appear to recognize that this statement of law is predicated on an insurer defeating the plaintiff's contract claim via estoppel; however, the court has already determined that CMIC is not entitled to judgment on North Church's contract claim based on its estoppel defense. *See id.*

CMIC also cites *Amine* for the proposition that "Texas law clearly holds that payment of an appraisal award does not constitute a liability finding required under Tex. Ins. Code § 542." Def.'s Reply 2. CMIC contends that, "[b]ecause there has been no finding of liability, [North Church] cannot sue for pre-appraisal violations." *Id.* CMIC correctly notes that to maintain a claim for delay of payment under the Texas Insurance Code, an insured must establish that: (1) a claim exists under an insurance policy; (2) the insurer is liable for the claim; and (3) the insurer failed to comply with

the Texas Insurance Code. *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001). CMIC's

contention that North Church cannot sue for pre-appraisal violations under the Texas Insurance Code

because there was no finding of liability in the appraisal process, however, is based on faulty logic.

*Amine* and other Texas courts have concluded that unless the parties agree to permit liability to be

addressed through the appraisal process, the appraisal is limited to determining the amount of loss.

*See, e.g., Wells*, 919 S.W.2d at 683-85 (analyzing appraisal provision and concluding authority of

appraisal panel was limited to determining only the amount of loss); *Amine*, 2007 WL 2264477, at

*5. Both parties acknowledge that there has been no finding of liability to date and that the appraisal

dealt only with the amount of the loss sustained by North Church, not CMIC's liability. That

CMIC's liability was not considered or determined in the appraisal process, however, is not evidence

that CMIC is not liable under the Policy.

Moreover, the issue of whether there is liability for a claim under an insurance policy is based

on coverage. As explained by the Texas Supreme Court, "There can be no liability under either

Article 21.55 or Article 21.21 of the Insurance Code *if there is no coverage under the policy*.

*Similarly, to the extent the policy affords coverage, extra-contractual claims remain viable.*" *State

Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (emphasis added and footnote omitted)

(citing *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (per curiam)).[3]

Here, there is no indication that the parties ever disputed whether North Church's claim was covered

---

[3] Both of these Texas Supreme Court cases dealt with Article 21.55, which provided that damages are to be awarded when the insurer is liable "pursuant to a policy of insurance." *Progressive Cnty. Mut. Ins. Co.*, 177 S.W.3d 919, 922 (Tex. 2005) (citing *Mid–Century Ins. Co. of Tex. v. Barclay*, 880 S.W.2d 807, 811 (Tex. App.—Austin 1994, writ denied)). The new codified version of Article 21.55 contains language that tracks the prior statute. *See* Tex. Ins. Code § 542.060 ("If an insurer that is *liable for a claim under an insurance policy* is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.") (emphasis added).

**Memorandum Opinion and Order – Page 20**

under the Policy. Rather, the parties disagreed on the amount of the loss.[4]   Accordingly, the court cannot say, based on the record before it, that North Church is precluded from asserting its extra-contractual claims under the Texas Insurance Code on the ground that there has been no finding as to liability.

Finally, while both *Amine* and *Breshears* concluded that "a delay in payment pursuant to the appraisal process does not implicate Article 21.55," North Church's delay claim does not appear to be based on the timing of CMIC's payment of remaining disputed items made pursuant to the appraisal process but instead on CMIC's delay in paying undisputed items *before* the appraisal process was initiated.   Accordingly, the *Amine* and *Breshears* courts' conclusions in this regard are irrelevant to the court's analysis.   Furthermore, if North Church's claims in this regard do not pertain to the matters that were submitted for appraisal and thus were *not determined pursuant to the appraisal process*, the court has difficulty understanding how the appraisal award can be binding as to these matters, and none of the cases relied on by CMIC appears to deal with this specific situation.

For all of the aforementioned reasons, the court concludes that CMIC has failed to establish the absence of a genuine dispute of material fact as to North Church's claims under the Texas Insurance Code and is therefore not entitled to judgment on these claims.

### 3.   Bad Faith and DTPA Claims

With regard to North Church's bad faith claim under Texas common-law, CMIC contends, "if the contract of insurance was not breached, there can be no bad faith related to the handling of

---

[4] As noted in the Factual and Procedural Background section of this opinion, North Church alleges in its Original Petition that "Defendant has failed and refused and continues to fail and refuse to pay the total value of the claims for which it is obligated to pay under the Policy." North Church's Original Petition predates the appraisal in which the amount of loss as to remaining disputed items was determined and paid.  It is unclear from the record whether North Church's claims, based on matters that CMIC allegedly failed and refused to pay, included those that were submitted and resolved by the appraisal process.

the claim." Def.'s Mot. 9.  CMIC further asserts: "When an insured joins claims under the Texas

Insurance code and the DTPA with a bad faith claim, *all asserting a wrongful denial of policy*

*benefits, if there is no merit to the bad faith claim*, there can be no liability on either statutory of the

statutory claims." *Id.* at 10 (quoting *Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456,

460 (5th Cir. 1997) (emphasis added).  CMIC therefore contends that:

> [North Church's claims for deceptive insurance practices and violations of the Texas
> Insurance code fail for the same reason that its common law bad faith claims fail.
> [CMIC] properly invoked the appraisal provision of the policy and promptly
> complied with the award when it was issued. Accordingly, [CMIC] did not deny or
> delay payment of a covered claim when it knew or should have known that liability
> under the policy was reasonably clear.

Def.'s Mot. 10.

The court has already determined that CMIC is not entitled to judgment as a matter of law

on North Church's contract claim based on its estoppel defense.  Moreover, common-law bad-faith

claims are treated similarly under Texas law as claims under the Texas Insurance Code in that a bad

faith claim fails if there has been a determination, with regard to the insured's breach of contract

claim, that there is no coverage.  *Progressive Cnty. Mut. Ins. Co.*, 177 S.W.3d at 922.  Here, there

is no evidence that  North Church's claim was not covered under the Policy.

CMIC's contention, based on the quote from *Higginbotham,* is similarly unavailing because

North Church's extra-contractual claims are not based on a wrongful denial of policy benefits.

Rather, Plaintiff's Texas Insurance Code and bad faith claims (as well as its contract claim) pertain

to the timeliness of payments made by CMIC before the appraisal process was invoked.  North

Church's DTPA claim is based in part on "Defendant's act of denying payment of benefits due under

the Policy"; however, when reading this allegation in the context of its other allegations that North

Church's DTPA claim is based on its contention that CMIC materially misrepresented the Policy

**Memorandum Opinion and Order – Page 22**

benefits.  CMIC's summary judgment motion does not address North Church's allegations as to alleged misrepresentations.  Moreover, the court determines that the quoted language from *Higginbotham* is not dispositive of Plaintiff's DTPA or bad faith claims because North Church's extra-contractual claims are not premised on wrongful denial of policy benefits, and there has been no showing that the bad faith claim is without merit.  *See Higginbotham*, 103 F.3d at 460. Accordingly, the court determines that CMIC has failed to establish the absence of a genuine dispute of material fact as to North Church's bad faith and DTPA claims.

Having determined that CMIC is not entitled to judgment on any of North Church's claims, the court need not address North Church's alternative argument that its bad faith claim falls within a recognized exception under Texas law that applies when an insured suffers injury independent of the policy claim.  Moreover, because there has been no discovery and CMIC previously represented to the court that none was necessary for purposes of deciding its summary judgment motion, the court declines, at this juncture, to consider CMIC's contention that North Church "has not produced any evidence" to support its entitlement to relief under this exception.  Def.'s Reply 6-7.  Further, the court determines that, without the benefit of discovery, North Church's pleadings that CMIC had no reasonable basis for delaying payment of North Church's claim is sufficient at this stage of the litigation.  *See Arnold v. National Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987) ("A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay.").

### 4.    Miscellany

As previously noted, the parties dispute at length the significance of the holdings and facts in a large number of cases involving appraisal awards and whether CMIC's payment of the appraisal award precludes North Church from asserting the claims at issue in this case. The court has reviewed all of the cases and concludes that they do not support CMIC's position that it is entitled to summary judgment, as a matter of law, on all of North Church's claims.  Most of the cases are not susceptible to the interpretation ascribed to them by CMIC, or they are factually distinguishable.  In addition, CMIC's citation to certain cases, while technically correct, is taken out of context and does not accurately reflect the holdings in those cases.  Moreover, all of the cases are fact specific and, as correctly noted by North Church, were decided based on evidence after discovery was conducted.

Additionally, in all of the cases relied on by CMIC, it appears that the insured's entire insurance claim was submitted for appraisal, not just certain disputed items, and the insured's contract and extra-contractual claims were limited to those matters submitted for appraisal.  That does not appear to be the case here because CMIC states in its briefing that certain aspects of Plaintiff's insurance claim were paid and resolved before the appraisal process was invoked, and only the "remaining disputed portion" of Plaintiff's insurance claim was submitted for appraisal. *See* Def.'s Mot. 4-5.  Further, unlike the plaintiffs in the cases cited by CMIC, North Church does not appear to dispute the umpire's determination regarding the amount of the estimated loss as to the appraised items; nor does it appear to contend, based on the timing of CMIC's post appraisal payments, that CMIC unreasonably delayed in making pre-appraisal payments.  Instead, North Church appears to contend, for example, that CMIC delayed unreasonably in making pre-appraisal payments for items that were not the subjection of appraisal, and CMIC misrepresented the type of

coverage provided under the Policy.  If this is the case and North Church's claims do not pertain to the matters that were determined *pursuant to the appraisal process*, the court, as previously noted, has difficulty understanding why the appraisal award would extend to and bind North Church as to these matters, and none of the cases relied on by CMIC deals with this specific situation.  In any event, this issue and the parties' related contentions are mooted by the court's determination that CMIC failed to meets its burden of establishing that the appraisal award was binding and enforceable against North Church, along with the other elements of its estoppel defense.

## IV.      Objection by Church North

The court's conclusion that CMIC is not entitled to summary judgment moots North Church's objection that CMIC's summary judgment is premature because North Church has not had adequate time to conduct discovery before responding.  Further, since no discovery has been conducted due to the abatement of the case, the court will issue an amended scheduling order permitting the parties to conduct discovery.  The objection is therefore **overruled as moot**.

## V.      Conclusion

For the reasons stated herein, the court concludes that CMIC has failed to meet its summary judgment burden with regard to its estoppel defense.  In addition, CMIC has failed to demonstrate the absence of a genuine dispute of material fact as to Plaintiff's claims.  The court therefore **denies** Defendant Church Mutual Insurance Company's Amended Motion for Summary Judgment (Doc. 19).  In denying CMIC's summary judgment motion, the court does not express any opinion regarding the strength of Plaintiff's claims.  The court simply concludes that CMIC has not met its summary judgment burden as to its affirmative defense or Plaintiff's claims.  Accordingly, Plaintiff's claims based on breach of contract, breach of the duty of good faith and fair dealing, and violations

of the Texas Insurance Code and DTPA remain for trial.  The court by separate order will enter an

amended scheduling order.  **The parties are directed to inform the court in writing by February**

**19, 2013, the amount of time needed for discovery**.

> **It is so ordered** this 11th day of February, 2013.


Sam A. Lindsay
United States District Judge